1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TOM VER LLC,<br><br>         Plaintiff,<br><br>      v.<br><br>ORGANIC ALLIANCE, INC, et al.,<br><br>         Defendants. | Case No. 13-CV-03506-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 151 |

Before the Court is Plaintiff Tom Ver LLC's motion for default judgment against Defendants Organic Alliance, Inc., Parker Booth, and Christopher White.  Having considered Plaintiff's motion, the relevant law, and the record in this case, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion.

## I.  BACKGROUND

### A.  Factual Background

Tom Ver LLC d/b/a MexFresh Produce ("Plaintiff") brings this case for violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, and for breach of contract.

Plaintiff is a Texas limited liability corporation in the business of selling wholesale

United States District Court
Northern District of California

1   quantities of produce.  Compl., ECF No. 1, ¶¶ 1-2.  Plaintiff operates its business under a valid

2   Perishable Agricultural Commodities Act ("PACA") license issued by the United States

3   Department of Agriculture.  *Id.* ¶ 2.  Defendant Organic Alliance, Inc. is a Nevada corporation

4   doing business in Salinas, California.  *Id.* ¶ 3(a).  Plaintiff alleges that Defendants Booth and

5   White were officers, directors, or shareholders in a position to control Organic Alliance at all

6   times relevant to this action.  *Id.* ¶ 3(b), (e).

7       Plaintiff alleges that all of the Defendants "were engaged, directly or indirectly, in the

8   business of purchasing and/or selling Produce in wholesale or jobbing quantities" and "of

9   negotiating sales and purchases of Produce in interstate or foreign commerce for or on behalf of a

10  vendor or purchaser, respectively."  *Id.* ¶¶ 4-5.  Therefore, Plaintiff alleges that Defendants are

11  "dealers" and "brokers" of produce as defined by PACA.

12      Plaintiff alleges that over the course of March and April 2013, Plaintiff entered into six

13  contracts with Organic Alliance in which Plaintiff agreed to sell produce to Organic Alliance.  *Id.*

14  ¶ 9, Ex. A.  Plaintiff shipped produce to Organic Alliance in California six times and sent

15  Defendants invoices reflecting a total invoice amount of $43,937.25.  *Id.* ¶¶ 10-13, Ex. A.

16  Plaintiff alleges that the parties agreed that "[i]nterest shall accrue on any past due account balance

17  at the rate of 1.5% per month (18% APR)."  *Id.* ¶ 15, Ex. A.  Plaintiff further alleges that the

18  parties agreed that "[i]n the event a collection action or other legal proceedings become necessary

19  for the seller to enforce any rights hereunder, buyer agrees to pay all costs of collection or other

20  legal proceedings, including attorney's fees and costs."  *Id.* ¶ 18, Ex. A.  Each invoice sent by

21  Plaintiff to Defendants includes the above language about the accrual of interest and Defendants'

22  liability for attorney's fees and costs.  *Id.* ¶¶ 15, 18, Ex. A.  Defendants accepted each shipment of

23  produce without objecting to any of the contract language in the invoices.  *Id.* ¶¶ 11-12, 19.

24  Defendants did not timely pay Plaintiff for any of the produce in the six shipments.  *Id.* ¶¶ 21-22.[1]

25

26  _____

27  [1] Plaintiff's spreadsheets showing the amount owed to Plaintiff indicate that sometime between
    July 30, 2013 and August 24, 2015, Defendants paid $3,000 to Plaintiff for part of the first
    shipment.  *See* ECF No. 151, Ex. A-1 (showing $3,000 payment).

28
Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

### B.  Procedural History

Plaintiff filed this PACA action against Defendants Organic Alliance, Inc., Parker Booth, Mark Klein, Michael Rosenthal, Christopher White, and Barry Brookstein on July 30, 2013.  ECF No. 1.  Plaintiff filed an ex parte application for a temporary restraining order against all Defendants on August 2, 2013.  ECF Nos. 6, 7.  The Court granted Plaintiff's ex parte application as to Defendants Organic Alliance and Booth on August 8, 2013.  ECF No. 11.  On August 26, 2013, the Court granted a preliminary injunction only as to Organic Alliance.  ECF No. 19.  Plaintiff had not effected adequate service as to any other Defendant.  *Id.* at 2.

On September 5, 2013, Plaintiff moved for entry of default against Defendants Organic Alliance and Brookstein.  ECF No. 22.  The Clerk of the Court entered default against Defendants Organic Alliance and Brookstein on September 16, 2013.  ECF No. 30.

Defendant Brookstein answered Plaintiff's complaint on September 12, 2013, ECF No. 28, and the Court granted the parties' stipulation to set aside default as to Defendant Brookstein on December 3, 2013.  ECF No. 36.

On September 6, 2013, Plaintiff filed a motion to enforce the temporary restraining order against Rabobank and to hold Rabobank in contempt.  ECF No. 23.  On December 27, 2014, Plaintiff moved for sanctions against Rabobank.  ECF No. 43.  The Court denied the motion for sanctions against Rabobank and denied as moot the motion to enforce the temporary restraining order and to hold Rabobank in contempt on February 7, 2014.  ECF Nos. 53.

Defendant Rosenthal answered Plaintiff's Complaint on February 7, 2014.  ECF No. 55.  Defendant Booth answered Plaintiff's Complaint on May 14, 2014.  ECF No. 78.

Plaintiff moved for entry of default against Defendant White on March 21, 2014.  No. 72.  The Clerk of the Court entered default against Defendant White on March 27, 2014.  ECF No. 74.

On June 12, 2014, Plaintiff filed motions for default judgment by the Clerk against Defendants Organic Alliance and White.  ECF Nos. 79, 80.  The Clerk of the Court denied Plaintiff's motions without prejudice on June 30, 2014 for lack of "documentation in support of damages, costs and accrual of interest."  ECF No. 82.

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

Plaintiff filed amended motions for default judgment against Defendants Organic Alliance and White on September 3, 2014.  ECF Nos. 86, 87.  On December 15, 2014, the Court denied Plaintiff's motion, once more without prejudice, because Plaintiff's motions failed to comply with Civil Local Rules 7-2(b) and 7-4(a) and failed "to provide any argument or pertinent legal authority in support of its motions."  ECF No. 98.  More specifically, Plaintiff's motion "failed to cite a single case or make any argument concerning why default judgment would be appropriate, and did not weigh the controlling factors for default judgment under *Eitel v. McKool*, 782 F.2d 1470 (9th Cir. 1986)."  *See* ECF No. 146 (order on motions for default judgment describing the deficiencies in Plaintiff's September 2014 motion for default judgment).

Defendants Brookstein and Rosenthal filed a joint motion for summary judgment on March 19, 2015.  ECF No. 107.  Plaintiff filed an opposition on April 16, 2015, ECF No. 110, and Defendants filed their reply on May 4, 2015.  The Court granted Defendants Brookstein's and Rosenthal's motion for summary judgment on May 20, 2015, ECF No. 126, and entered judgment in their favor on May 21, 2015, ECF No. 127.

Plaintiff filed a third motion for default judgment against Defendant Organic Alliance and Defendant White on May 28, 2015. ECF No. 134.  Plaintiff once more failed "to cite any legal authority or provide any legal analysis for why an entry of default judgment against Defendants Organic Alliance and Christopher White is appropriate in the instant case."  ECF No. 35 (order denying May 2015 motion for default judgment).  In addition to failing to comply with the Court's order and the Civil Local Rules, "Plaintiff's deficient submissions left the Court with no basis to determine whether the Court could properly exercise personal or subject-matter jurisdiction and whether Plaintiff had shown the basic elements of Plaintiff's claims against Defendants Organic Alliance and White."  *See* ECF No. 143 (pretrial conference order detailing the deficiencies with Plaintiff's default judgment motions).  On June 17, 2015, the Court denied Plaintiff's motions for default judgment with prejudice.  ECF No. 135.

The Court held a pretrial conference on July 30, 2015.  ECF No. 143.  At the pretrial conference, Plaintiff requested that the Court consider allowing Plaintiff to file a fourth set of

United States District Court
Northern District of California

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1   motions for default judgment against Defendants Organic Alliance and White, or allowing

2   Plaintiff to go to trial against these absent Defendants.  As Plaintiff had not made such a request in

3   its pretrial statement and was unprepared to cite any authority to the Court in support of its

4   request, the Court took a more than two hour recess to allow Plaintiff's counsel to find pertinent

5   legal authority.

6          Following that recess on the same day, Plaintiff submitted arguments to the Court and

7   requested leave to file briefing in support of its request that the Court allow Plaintiff to seek

8   judgment against Defendants Organic Alliance and White, either at trial or by default.  The Court

9   gave Plaintiff leave to file briefing on whether the Court should permit Plaintiff to file a fourth

10  motion for default judgment against Defendants Organic Alliance and White.  ECF No. 143

11  (pretrial conference order giving Plaintiff leave to file briefing).  Plaintiff filed briefing on whether

12  the Court should permit Plaintiff to file a fourth default judgment motion on August 3, 2015.  ECF

13  No. 145.  On August 4, 2015, the Court granted Plaintiff leave to file a fourth motion for default

14  judgment against Defendants Organic Alliance and White.  ECF No. 146.

15         On August 17, 2015, the Court held a bench trial against Defendant Booth.  ECF No. 149.

16  Booth did not appear for the bench trial.  *Id.*  Based on the long history of this case, Booth's

17  willful failure to appear at trial, and Booth's inexcusable failure to participate or otherwise defend

18  himself in this action since May 2014, the Court found that Booth's failure to appear for trial

19  warranted the striking of his answer and the entry of default against him.  *Id.*  Accordingly, the

20  Court exercised its discretion and inherent authority to strike Booth's answer containing

21  affirmative defenses for failure to appear and defend at trial.  *Id.*  The Court directed the Clerk of

22  Court to enter default against Booth for failure to otherwise defend this action under Federal Rule

23  of Civil Procedure 55.  *Id.*  The Clerk entered default against Booth on August 17, 2015.  ECF No.

24  150.

25         Plaintiff filed the instant motion for default judgment against Defendants Organic Alliance,

26  Booth, and White on August 24, 2015.  ECF No. 151.  No opposition was filed.

27

28

## II. LEGAL STANDARD

Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default.  Fed. R. Civ. P. 55(b).  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments.").  "In applying this discretionary standard, default judgments are more often granted than denied."  *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. DISCUSSION

### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).  The Court thus begins by evaluating subject matter jurisdiction and personal jurisdiction.

#### 1. Subject Matter Jurisdiction

The Court finds the exercise of subject matter jurisdiction over this case is proper.  "[A]

United States District Court
Northern District of California

1    federal court may exercise federal-question jurisdiction if a federal right or immunity is an

2    element, and an essential one, of the plaintiff's cause of action." *Provincial Gov't of Marinduque*

3    *v Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (citation omitted); *see also* 28 U.S.C.

4    § 1331.  Plaintiff asserts claims under PACA and California contract law.  *See* Compl. ¶¶ 24-61.

5    As the PACA causes of action raise federal questions, the Court may properly exercise subject

6    matter jurisdiction over the PACA causes of action.  Because the state law claim arises out of the

7    same factual allegations as the PACA causes of action, the Court exercises supplemental

8    jurisdiction over that claim.  *See* 28 U.S.C. § 1367(a).

9        **2.  Personal Jurisdiction**

10        To determine the propriety of asserting personal jurisdiction over a nonresident defendant,

11   the Court examines whether such jurisdiction is permitted by the applicable state's long-arm

12   statute and comports with the demands of federal due process.  *Harris Rutsky & Co. Ins. Servs.,*

13   *Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003).  Because California's long-

14   arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements,

15   the jurisdictional analyses under state law and federal due process are the same.  *See* Cal. Civ.

16   Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not

17   inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v.*

18   *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  For a court to exercise personal

19   jurisdiction over a nonresident defendant consistent with due process, that defendant must have

20   "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does

21   not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*,

22   326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In addition, "the

23   defendant's 'conduct and connection with the forum State' must be such that the defendant

24   'should reasonably anticipate being haled into court there.'"  *Sher v. Johnson*, 911 F.2d 1357,

25   1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

26   (1980)).

27        A court may exercise either general or specific jurisdiction over a nonresident defendant.

28

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1   *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction exists where

2   a nonresident defendant's activities in the state are "continuous and systematic" such that said

3   contacts approximate physical presence in the forum state.  *See Schwarzenegger v. Fred Martin*

4   *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted).  Where general jurisdiction is

5   inappropriate, a court may still exercise specific jurisdiction where the nonresident defendant's

6   "contacts with the forum give rise to the cause of action before the court."  *Doe v. Unocal Corp.*,

7   248 F.3d 915, 923 (9th Cir. 2001).

8       Additionally, for the Court to exercise personal jurisdiction over a defendant, the defendant

9   must have been served in accordance with Federal Rule of Civil Procedure 4.  *See Jackson v.*

10  *Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with

11  Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote

12  omitted)).

13              **a.  Organic Alliance**

14      As to Defendant Organic Alliance, the Court concludes that the exercise of general

15  jurisdiction is appropriate.  Plaintiff has alleged that Organic Alliance maintains a physical office

16  in Salinas, California.  Compl. ¶ 3.  Plaintiff further alleges that it delivered the produce at issue to

17  Defendant Organic Alliance in California.  Compl. Ex. A.  Organic Alliance not only "[did]

18  business with California," but in fact "[did] business in California."  *Bancroft & Masters, Inc. v.*

19  *Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (contacts approximating physical presence

20  in California, such as doing business in California, support the exercise of general jurisdiction).

21  As such, Organic Alliance has "substantial" and "continuous and systematic" contacts with

22  California as well as a "physical presence" in California that support the Court's exercise of

23  general jurisdiction.  *See Schwarzgenner*, 374 F.3d at 801 (general jurisdiction exists where a

24  defendant has "continuous and systematic general business contacts . . . that approximate physical

25  presence in the forum state" (citations omitted)).  Additionally, Plaintiff effected service of

26  process upon Organic Alliance by having the summons and the complaint served upon Organic

27  Alliance's registered agent.  *See* ECF No. 13 (affidavit of service upon the registered agent for

28

8

Organic Alliance); Fed. R. Civ. P. 4(h)(1)(B) (permitting service on a corporation by delivering a copy of the summands and of the complaint to an agent authorized to receive service of process). There is no indication in the record that this service was improper.

### a.  Parker Booth

As to Defendant Booth, the Court concludes that the exercise of personal jurisdiction is appropriate.  Booth filed an answer in this case on May 14, 2014.  ECF No. 78.  In his answer, Booth did not challenge the Court's exercise of personal jurisdiction over Booth.  *See id.*  Thus, Booth has waived any challenge to defects in the Court's exercise of personal jurisdiction over Booth.  *See Jackson*, 682 F.2d at 1347 ("Defendants can waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary motion or in a responsive pleading." (citations omitted)).

### b.  Christopher White

As to Defendant White, although the Clerk of the Court entered default against White in March of 2014, ECF No. 74, Plaintiff did not make any arguments supporting the exercise of personal jurisdiction over White in any of Plaintiff's three previous motions for default judgment against White.  *See* ECF No. 143 (pretrial conference order noting that Plaintiff's previous default judgment orders failed to argue that personal jurisdiction was appropriate).  Plaintiff's instant motion for default judgment does argue that personal jurisdiction over White is appropriate. However, the Court concludes that Plaintiff has failed to allege sufficient facts showing that exercise of personal jurisdiction over Defendant White is appropriate.

First, the Complaint fails to make any allegations whatsoever with respect to White's connections to the state of California.  Although Plaintiff argues that White maintains a residence in Berkeley, California, ECF No. 151 at 9, this assertion does not appear anywhere in the Complaint.

Second, Plaintiff has not properly served Defendant White in this case.  Federal Rule of Civil Procedure 4 provides the following methods for serving an individual within a judicial district of the United States:

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> > (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> >
> > (2) doing any of the following:
> >
> > > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > >
> > > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > >
> > > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

10

Fed. R. Civ. P. 4(e).

11

California Code of Civil Procedure section 415.20 authorizes substitute service of process

12

in lieu of personal delivery. Section 415.20 provides in relevant part that:

13
14
15
16
17
18
19
20

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

21

Cal. Code Civ. P. § 415.20(b). California permits service by mail, but service by mail to

22

California residents is not deemed complete until "the date a written acknowledgement of receipt

23

of summons is executed." Cal. Code Civ. P. § 415.30. If the person to be served fails to complete

24

and return the written acknowledgement of receipt of summons, there has been no effective

25

service and the serving party must attempt service by another method. *Id.*; *see also Thierfeldt v.*

26

*Marin Hosp. Dist.*, 35 Cal. App. 3d 186, 199 (1973) (holding that if the party to whom a summons

27

and complaint are mailed fails to execute and return an acknowledgment of service, "there is no

28

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1    effective service"). California permits service by posting the summons and complaint only in

2    actions for unlawful detainer of real property. Cal. Code Civ. P. § 415.45.

3            The first affidavit of service for Defendant White states that the process server attempted

4    personal service four times at an address in Berkeley, California, but that White never answered.

5    *See* ECF No. 52 (first affidavit of service upon White). After the fourth attempt, the process

6    server posted the summons and complaint "to a conspicuous place on the property." *Id.* Plaintiff

7    then sent a copy of the summons and complaint to White's address by certified mail. ECF No. 61

8    (second affidavit of service upon White). There is no indication in the record that White ever

9    executed and returned a written acknowledgment of service.

10           The actions taken to serve White were insufficient to effect service of process. There is no

11   indication that White was personally served, nor that the summons and the complaint were left

12   "with someone of suitable age and discretion" at White's usual place of abode, nor that the

13   summons and the complaint were delivered to White's agent for service of process. Thus, service

14   of process was not effected under Federal Rule of Civil Procedure 4(e)(2).

15           Instead, Plaintiff argues that White was served by substituted service under California law,

16   as permitted by Federal Rule of Civil Procedure 4(e)(1). *See* ECF No. 151 at 6 ¶18. California

17   Code of Civil Procedure section 415.20 requires the summons and the complaint to be left "in the

18   presence of a competent member of the household or a person apparently in charge" of the

19   location where the summons and complaint are left. The first affidavit of service for White does

20   not indicate that the summons and the complaint were left with any such individual, *see* ECF No.

21   52, so service of process was not effected under section 415.20. Instead, the first affidavit of

22   service states that the summons and the complaint were posted at White's address in Berkeley.

23   ECF No. 52. However, service by posting the summons and complaint is not available in this case

24   because this is not an unlawful detainer action. *See* Cal. Code Civ. P. 415.45. Finally, the second

25   affidavit of service for White states that the summons and the complaint were mailed to White in

26   California, but the record does not indicate that White ever executed and returned a written

27   acknowledgment of service. Without a written acknowledgment of service executed and returned

28

11

United States District Court
Northern District of California

1    by White, mailing the summons and the complaint to White's residence in California does not

2    effect service of process.  *See* Cal. Code Civ. P. § 415.30; *Thierfeldt*, 35 Cal. App. 3d at 199.

3    Therefore, White has not been served pursuant to California law.

4         Because White has not been properly served with process in this case, the Court may not

5    exercise personal jurisdiction over White.  Therefore, the Court DENIES Plaintiff's motion for

6    default judgment as to Defendant White.

7         The Court proceeds to discuss whether default judgment is proper only as to Defendants

8    Organic Alliance and Booth.

9         **B.  Whether Default Judgment is Proper**

10        Having determined that the exercise of subject matter jurisdiction and personal jurisdiction

11   over Defendants Organic Alliance and Booth is appropriate, the Court now turns to the *Eitel*

12   factors to determine whether entry of default judgment against Organic Alliance and Booth is

13   warranted.

14        **1.   First *Eitel* Factor: Possibility of Prejudice**

15        Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if

16   default judgment is not entered against a defendant.  Absent a default judgment, Plaintiff in this

17   case will not obtain payment to which it is entitled for produce Plaintiff has already provided to

18   Defendants.  Thus, the first factor weighs in favor of granting default judgment.

19        **2.   Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and
             the Sufficiency of the Complaint**

20        The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims

21   as pleaded in the Complaint.  These two factors are often analyzed together.  *See Dr. JKL Ltd. v.*

22   *HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In its analysis of the second

23   and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability.

24   *See Fair Hous. of Marin*, 285 F.3d at 906.  The Court will therefore consider the merits of

25   Plaintiff's claims and the sufficiency of the Complaint together.

26        Plaintiff brings four claims arising out of PACA and one claim for breach of contract.  The

27

28

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

Court first addresses the merits and sufficiency of Plaintiff's PACA claims and then turns to the merits and sufficiency of the breach of contract claim.

### a. PACA Claims

Counts 1, 2, 4, and 5 in the Complaint bring causes of action arising under PACA. Count 1 is a claim against all Defendants for enforcement of the PACA trust to require Defendants to turn over all assets in the PACA trust for the benefit of all unpaid trust beneficiaries. Compl. ¶¶ 24-30. Count 2 is a claim against all Defendants for failure under PACA to pay Plaintiff promptly. *Id.* ¶¶ 31-35. Count 4 is a claim against the Defendants who are alleged to be officers, directors, or shareholders of Organic Alliance (the Individual Defendants) for breach of fiduciary duty with regard to assets in the PACA trust. *Id.* ¶¶ 42-52. Count 5 is a claim against the Individual Defendants for interference with PACA trust assets. *Id.* ¶¶ 53-61.

PACA protects sellers of perishable agricultural goods by requiring a merchant, dealer, or retailer of perishable produce to hold in trust proceeds from the sale of the perishable produce, and food derived from that produce, for the benefit of all unpaid suppliers. 7 U.S.C. § 499e(c)(2); *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1104-05 (9th Cir. 2001). Under PACA, "a produce dealer holds produce-related assets as a fiduciary" in the statutory trust "until full payment is made to the produce seller." *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992). "The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received." *Id.*; *see also* 7 U.S.C. § 499e(c)(2).

There are five elements to a PACA cause of action:

> (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Beachside Produce, LLC v. Flemming Enters., LLC*, No. C-06-04957 JW, 2007 WL 1655554, at *2 (N.D. Cal. June 6, 2007) (citing 7 U.S.C. § 499e(c)(3), (4); 7 C.F.R. § 46.46(c), (f)).

13

United States District Court
Northern District of California

1    Plaintiff satisfies the first element because Plaintiff alleges that it sold perishable

2    agricultural commodities to Defendants.  Compl. ¶¶ 2, 10.

3    For the second element, PACA defines a "dealer" as "any person engaged in the business

4    of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity

5    in interstate or foreign commerce."  7 U.S.C. § 499a(b)(6).  Furthermore, "individuals associated

6    with corporate defendants may be liable under a PACA trust theory."  *Sunkist Growers, Inc. v.*

7    *Fisher*, 104 F.3d 280, 282 (9th Cir. 1997).  "[I]ndividual shareholders, officers, or directors of a

8    corporation who are in a position to control PACA trust assets . . . may be held personally liable

9    under the Act."  *Id.* at 283.  "If deemed a PACA 'dealer,' an individual is liable for his own acts,

10   omissions, or failures while acting for or employed by any other dealer."  *Id.* (citing 7 U.S.C.

11   § 499e(a)).

12   Plaintiff satisfies the second element as to Defendants Organic Alliance and Booth.

13   Plaintiff alleges that both Defendant Organic Alliance and Defendant Booth were dealers under

14   PACA because "[a]t all times relevant hereto, each of the Defendants were engaged, directly or

15   indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing

16   quantities."  Compl. ¶ 4.  Specifically as to Organic Alliance, Plaintiff alleges that Organic

17   Alliance purchased produce from Plaintiff.  Compl. ¶ 10.  This is sufficient to allege that Organic

18   Alliance was a dealer under PACA.  As to Booth, Plaintiff alleges that Booth was in a position to

19   control Organic Alliance at the time that Organic Alliance purchased produce from Plaintiff.  *Id.*

20   ¶ 3.  Plaintiff additionally attaches as an exhibit to the motion for default judgment an affidavit

21   executed by Booth stating that he joined Organic Alliance "as its president, chief executive officer

22   and director in November, [sic] 2008 and ha[s] continued in that capacity since then."  ECF No.

23   151, Ex. B ¶ 1.  Plaintiff also attaches as an exhibit an affidavit from the former office manager for

24   Organic Alliance stating that Booth directed the office manager "to pay certain bills and not pay

25   other bills."  *Id.*, Ex. D ¶ 2.  These affidavits are sufficient to establish that Booth exercised control

26   over Organic Alliance and it's assets, such that Booth may be held personally liable for the PACA

27   violations.  *See Sunkist Growers*, 104 F.3d at 283 ("[I]ndividual shareholders, officers, or directors

28

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    of a corporation who are in a position to control PACA trust assets . . . may be held personally

2    liable under the Act.").

3          For the third element, courts have held that this element is satisfied where "the

4    commodities involved are the type typically sold in interstate commerce" and where the seller

5    involved is "the type that Congress intended to protect by implementing PACA." *Greenfield*

6    *Fresh, Inc. v. Berti Produce-Oakland, Inc.*, No. 14-cv-01096-JSC, 2014 WL 5700695, at *3 (N.D.

7    Cal. Nov. 3, 2014) (quoting *Oregon Potato Co. v. Seven Stars Fruit Co., LLC*, No. C12-0931JLR,

8    2013 WL 230984, at *5 (W.D. Wash. Jan. 22, 2013)).  Plaintiff alleges that it sells its produce in

9    interstate commerce.  Compl. ¶ 2.  This is sufficient to satisfy the third element.  *See id.* (allegation

10   that plaintiff sold produce in interstate commerce sufficient to satisfy the interstate commerce

11   element of a PACA claim).

12         Plaintiff alleges that Plaintiff did not receive prompt and full payment from Defendants for

13   the produce sold to Defendants, Compl. ¶¶ 10-12, 22, thus satisfying the fourth element of a

14   PACA cause of action.  Plaintiff additionally attaches to the Complaint and the motion for default

15   judgment the invoices Plaintiff sent to Defendants.  *See* Compl., Ex. A; ECF No. 151, Ex. A.

16   These invoices include the statutory language regarding the PACA trust, *see id.*, thus satisfying the

17   fifth element.

18         Furthermore, all four of Plaintiff's PACA causes of action are cognizable claims under

19   PACA.  PACA permits persons injured by a PACA violation committed by a merchant, dealer, or

20   broker to bring suit for damages arising from that violation.  7 U.S.C. § 499e(a)-(b).  Plaintiff's

21   Count 1, which alleges that Defendants have not maintained the PACA trust seeks enforcement of

22   the trust, seeks redress for Defendant's failure "to maintain the trust as required," in violation of  7

23   U.S.C. § 499b(4).  Count 2, which alleges that Defendants failed to pay Plaintiff promptly, is

24   permissible because "[d]ealers violate PACA if they do not pay promptly and in full for any

25   perishable commodity in interstate commerce." *Sunkist Growers*, 104 F.3d at 282 (citing 7 U.S.C.

26   § 499b(4)).  Count 4 and Count 5 allege that Defendant Booth breached his fiduciary duty to

27   Plaintiff and interfered with the PACA trust assets, respectively.  These claims are cognizable

28
                                              15

because "[a]n individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." *Sunkist Growers*, 104 F.3d at 283. Thus, a PACA trust "imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier." *Id.*

Because Plaintiff has sufficiently alleged the elements for Plaintiff's four PACA causes of action, the Court concludes that Plaintiff has sufficiently stated claims against Defendants Organic Alliance and Booth for enforcement of the PACA trust and for violation of PACA by failing to pay promptly, and against Defendant Booth for PACA violations for breach of fiduciary duty to the PACA trust beneficiary and for interference with PACA trust assets.

### b. Breach of Contract

Count 3 of the Complaint is for breach of contract against Organic Alliance. Compl. ¶¶ 36-41. The elements of breach of contract under California law are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen'l Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Plaintiff alleges that Plaintiff had multiple contracts with Organic Alliance for the purchase of produce, that Plaintiff performed by delivering the produce to Organic Alliance, that Organic Alliance breached the contracts by not paying for the produce, and that Plaintiff has been damaged by Organic Alliance's failure to pay. Compl. ¶¶ 9-12, 22. This is sufficient to state a claim for breach of contract.

Because Plaintiff has sufficiently stated claims for violations of PACA and for breach of contract, the second and third *Eitel* factors weigh in favor default judgment.

### 3. Fourth *Eitel* Factor

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the

16

United States District Court
Northern District of California

amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594-JSW, 2007 U.S. Dist. LEXIS 100237, at *33 (N.D. Cal. Mar. 22, 2007), *adopted by* 2007 WL 1545173 (N.D. Cal. May 29, 2007).  Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions.  *See id.*

Plaintiff seeks to recover $40,937.25 for unpaid produce, $21,240.29 in interest, and $106,166.78 in attorney's fees and costs.  Although not insubstantial sums, the amount that Plaintiff requests is reasonable in light of the fact that Plaintiff shipped produce to Defendants more than two and a half years ago for which Plaintiff still has not received full payment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case.  Defendant Organic Alliance has failed to make an appearance in this case, and the Court has stricken Defendant Booth's answer.  The Court therefore takes the allegations in the complaint as true.  *Fair Hous.*, 285 F.3d at 906.  Given that posture, the Court finds that disputes of material facts are unlikely.

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect.  A summons was issued to Organic Alliance on July 30, 2013, ECF No. 4, and returned executed on August 16, 2013, ECF No. 13.  Nothing in the record before the Court indicates that the service as to Organic Alliance was improper.  Organic Alliance, however, has not appeared in this case.  Nothing before the Court suggests that Organic Alliance's failure to appear was the result of excusable neglect.

Defendant Booth did file an answer in this case on May 14, 2014.  ECF No. 78.  However, since filing his answer, Booth has not made any further appearances in this case.  Booth failed to appear at the September 3, 2014 case management conference, ECF No. 90; the March 11, 2015 case management conference, ECF No. 105; the May 21, 2015 case management conference, ECF No. 128; the pretrial conference on July 30, 2015, ECF No. 143; and the bench trial on August 17,

17

2015, ECF No. 149.  Booth also failed to comply with the Court's June 17, 2015 order directing the parties to file a joint pretrial statement, despite being contacted numerous times by Plaintiff. *See* ECF Nos. 135, 137.  Booth also failed to confirm his participation in Magistrate Judge Nathanael Cousins's July 28, 2015 settlement conference, despite a court order to do so.  ECF No. 140.  The Court had referred the parties to a settlement conference with Magistrate Judge Cousins, and Defendant Booth failed to respond to the Court's referral to a settlement conference and failed to appear at and participate in the settlement conference.  Booth's failure to participate or otherwise defend himself in this action since May 2014 was willful and inexcusable, not the result of excusable neglect.

The fifth and sixth *Eitel* factors thus favor entry of default judgment.

### 5.  Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself.  *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014).  Although Defendant Organic Alliance was served over two years ago, Organic Alliance has never made an appearance nor challenged the entry of default against it.  Defendant Booth has made no appearance in this case in the past 18 months and willfully failed to appear at trial.  ECF No. 149.  The likelihood of the case proceeding to a resolution on the merits is unlikely.  The Court finds that the seventh *Eitel* factor is outweighed by the other six factors that favor default judgment.  *See Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014) (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment).  The Court therefore finds that default judgment is appropriate in this case.

### C.  Damages

A plaintiff seeking default judgment "must also prove all damages sought in the

18

1    complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld*

2    *Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  Federal Rule of Civil Procedure 55 does not

3    require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary

4    basis for the damages awarded in the default judgment.  *See Action SA v. Marc Rich & Co.*, 951

5    F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters.,*

6    *Inc. v. LMC Intern., Inc.*, No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

7    Plaintiff has provided a supporting declaration and a spreadsheet detailing Plaintiff's requested

8    damages, along with invoices showing the original amounts due for the produce shipped by

9    Plaintiff.  *See* ECF No. 151-1.  Plaintiff has provided additional declarations and timesheets

10   supporting Plaintiff's request for attorney's fees and costs.  *See* ECF Nos. 151-5, -6.

11        Plaintiff requests damages for the invoice value of the unpaid produce, interest on the

12   invoice value of the unpaid produce, and attorney's fees and costs.

13            **1.  Unpaid Produce**

14        Under PACA, a dealer who violates its provisions "shall be liable to the person or persons

15   injured thereby for the full amount of damages . . . sustained in consequence of such violation."  7

16   U.S.C. § 499e(a).  Plaintiff has submitted invoices showing that Plaintiff shipped produce with an

17   invoice value of $43,937.25 to Organic Alliance and that as of August 24, 2015, Plaintiff has

18   received only $3,000 in payments.  ECF No. 151, Ex. A; *see also* Compl. ¶ 22, Ex. A.  The Court

19   finds that Plaintiff's invoices are sufficient to establish Plaintiff's entitlement to $40,937.25 for the

20   remaining invoice value of the unpaid produce.

21            **2.  Interest, Attorney's Fees, and Costs**

22        The Ninth Circuit has held that, in addition to the invoice value of unpaid produce, PACA

23   permits a plaintiff to recover prejudgment interest as well as attorney's fees and costs if the

24   contract between the plaintiff and the defendant stated that the defendant would be liable for

25   interest, attorney's fees, and costs.  *Middle Mountain Land & Produce Inc. v. Sound Commodities*

26   *Inc.*, 307 F.3d 1220, 1224-25 (9th Cir. 2002); *see also Greenfield Fresh*, 2014 WL 5700695, at *4-

27   5 (holding that a PACA plaintiff was entitled to prejudgment interest, attorney's fees, and costs

28

19

1  based on the contract between the plaintiff and the defendant).

2          In this case, Plaintiff alleges that its contract with Defendants provided that Defendants

3  would be liable for interest at 18% APR on any overdue payments as well as for attorney's fees

4  and costs associated with recovering any overdue payments.  To support Plaintiff's allegation,

5  Plaintiff points to the invoices Plaintiff sent to Defendants, all of which include the following

6  language:

7                  Interest shall accrue on any past due account balance at the rate of
                   1.5% per month (18% APR).  In the event a collection action or
8                  other legal proceedings becomes necessary for the seller to enforce
                   any rights hereunder, buyer agrees to pay all costs of collection or
9                  other legal proceedings, including attorney's fees and costs.

10  Compl., Ex. A.  The Ninth Circuit in *Middle Mountain* declined to reach the issue of whether

11  invoices were sufficient to establish a contractual right to interest, attorney's fees, and costs and

12  instead remanded the issue to the district court.  *See* 307 F.3d at 1225.  In other contexts, however,

13  the Ninth Circuit has held that terms in an invoice for the sale of goods are included in the parties'

14  contract.  *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d

15  972, 976 (9th Cir. 1996) (awarding concrete suppliers prejudgment interest based on the terms in

16  the supplier's invoices).  Other courts in this District have determined that contractual language on

17  invoices is sufficient in PACA cases to establish contractual obligations, including obligations to

18  pay prejudgment interest, attorney's fees, and costs.  *See, e.g.*, *Greenfield Fresh*, 2014 WL

19  5700695, at *4-5 (language on invoices sufficient to establish contractual right to collect

20  prejudgment interest, attorney's fees, and costs); *C.H. Robinson Co.*, 2007 WL 39311, at *4

21  (same).  The Court concludes that Plaintiff's invoices are sufficient to establish that Plaintiff is

22  entitled to collect prejudgment interest, attorney's fees, and costs from Defendants.

23          **a.  Interest**

24          Plaintiff requests $21,240.29 in prejudgment interest.  In support of this request, Plaintiff

25  provides a spreadsheet calculating interest at 1.5% per month (18% APR) as provided for in

26  Plaintiff's invoices.  *See* ECF No. 151, Ex. A-1.  This spreadsheet shows accrued interest of

27  $21,240.29.  The Court finds that Plaintiff's calculations are sufficient to establish Plaintiff's

28

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    entitlement to $21,240.29 for interest on the invoice value of the unpaid produce.

2    **b.  Attorney's Fees and Costs**

3    As previously discussed, Plaintiff has a contractual right to recover attorney's fees from

4    Defendants.  Where a plaintiff has a contractual right to attorney's fees, the plaintiff has a right

5    under PACA to enforce the right to attorney's fees as part of the perishable agricultural

6    commodities contract.  *Middle Mountain Land*, 307 F.3d at 1224-25.  The Court stated in its

7    August 4, 2015 Order permitting Plaintiff to bring a fourth motion for default judgment against

8    Defendants Organic Alliance and White that it would not entertain any request for attorney's fees

9    that includes Plaintiff's fees incurred for (1) the three previous, deficient motions for default

10   judgment; (2) research regarding case law to allow Plaintiff to try its case against, or file a fourth

11   motion for default judgment against, Defendants White and Organic Alliance; or (3) the briefing

12   requesting permission to file a fourth motion for default judgment against, or to try Plaintiff's case

13   against Defendants White and Organic Alliance.  ECF No. 149.

14   Courts in the Ninth Circuit calculate attorney's fees using the lodestar method, whereby a

15   court multiplies "the number of hours the prevailing party reasonably expended on the litigation

16   by a reasonable hourly rate."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)

17   (citation omitted).  A party seeking attorney's fees bears the burden of demonstrating that the rates

18   requested are "in line with the prevailing market rate of the relevant community."  *Carson v.*

19   *Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted).  Generally, "the

20   relevant community is the forum in which the district court sits."  *Camacho*, 523 F.3d at 979

21   (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "[a]ffidavits of the

22   plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

23   determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *U.*

24   *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

25   Here, Plaintiff submitted declarations and timesheets from Plaintiff's lead counsel, Jason

26   Klinowski, and from Plaintiff's local counsel, Kathryn Diemer.  ECF No. 151, Exs. E-F.  The

27   timesheets submitted by Klinowski include hours worked by other attorneys and paralegals at his

28

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

current law firm Wallace, Jordan, Ratliff & Brandt, LLC ("WJRB"), and from his former law firm Freeborn & Peters, LLC ("F&P"). *Id.* Ex. F. The hourly rate billed by attorneys at WJRB and F&P in this matter ranged from $225 per hour to $350 per hour. The hourly rate billed by paralegals in this matter ranged from $125 per hour to $225 per hour. *Id.* The timesheets submitted by Diemer include hours worked by other attorneys at her law firm Diemer, Whitman & Cardosi, LLP ("DWC"). *Id.* Ex. E. The hourly rate billed by attorneys at DWC ranged from $310 per hour to $400 per hour. *Id.* Plaintiff's attorneys have averred that these rates are "competitive in the narrow field of PACA trust enforcement." *Id.* Exs. E-F. Klinowski additionally states in his declaration that the "current customary rate charged by similar firms practicing in the area of PACA trust enforcement is often as high as $395 per hour." *Id.* Ex. F.

Courts have held that rates of $250 per hour to $370 per hour were reasonable for attorney's fees in similar PACA cases. *See Greenfield Fresh*, 2015 WL 1160584, at *4 (N.D. Cal. March 13, 2015) (finding that attorney's fees ranging from $275 per hour to $370 per hour were reasonable in a PACA case); *C.H. Robinson Co. v. Marina Produce Co.*, No. C 05-04032-WHA, 2007 WL 39311, at *4 (N.D. Cal. Jan. 4, 2007) (finding that $250 per hour was reasonable for attorney's fees in a PACA case); *Sequoia Sales, Inc. v. P.Y. Produce, LLC*, No. CV 10-575 CW (NJV), 2011 WL 3607242, at *9 (N.D. Cal. July 29, 2011) (finding attorney's fees of $285 per hour to $350 per hour were reasonable in a PACA case). In breach of contract cases, courts in this District have approved hourly rates of $500 or more. *See, e.g.*, *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1069 (N.D. Cal. 2012) (finding an hourly rate of $500 per hour reasonable in a breach of contract case). In light of these cases and the declarations submitted by Klinowski and Diemer, the Court concludes that Plaintiff's requested rates for the attorneys at WJRB, F&P, and DWC are reasonable.

The Court has reviewed counsel's declarations and timesheets, which contain descriptions of each activity performed and lists time worked in increments of hundredths of an hour, and finds them adequately detailed and related to the work required for this litigation over the past two and a half years. However, the Court notes three discrepancies. First, the timesheet submitted for F&P

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1    for February 2014 is missing page 3.  F&P claims fees of $1088.50 for the month of February

2    2014 but only submitted time sheets accounting for $886 of fees for 3.3 hours of work.  As the

3    Court has no record of the hours corresponding to the additional $202.50 for February 2014, the

4    Court reduces the fee award to F&P by $202.50.  Second, there is an arithmetic error in the

5    handwritten corrections to the WJRB invoice for July 2015 to subtract fees associated with the

6    default judgment motions.  Counsel should have reduced the fees for July 2015 by $5760 but only

7    reduced the fees by $4702.50.  Accordingly, the Court reduces the fee award to WJRB by

8    $1057.50.  Third, DWC submitted duplicate timesheets for September 2013.  Taking account of

9    the duplicate entries and omitting all hours spent on the prior default judgment motions, the Court

10   calculates that DWC's timesheets sum to only 109.2 hours, corresponding to $41,383.50 in fees.

11       As to total hours, counsel submitted itemized billing records that show, after accounting

12   for the above corrections, totals of 109.2 billed hours for DWC, 56.6 hours billed for WJRB, and

13   82.5 hours billed for F&P.  *See* ECF No. 151, Exs. E-F.  Counsel described in detail the work

14   corresponding to each timesheet entry.  *Id.*  Klinowski, who calculated the final total for attorney's

15   fees, stated in his declaration that "none of counsel's time submitted as part of the request for

16   attorney's fees includes time spent and fees incurred for the previous default judgment motions

17   filed in this action, research on the question of allowing Mexfresh to try its case against, or bring a

18   fourth motion for default judgment against, Defendants Organic Alliance and White, or the

19   briefing relating to that issue," and the Court has verified that these exclusions have been made.

20   *Id.* Ex. F ¶ 11.  Therefore, the Court awards Plaintiff a total of $80,777.50, corresponding to

21   $39,394 for lead counsel time and $41,383.50 for local counsel time.

22       Plaintiff additionally requests attorney's fees for estimated unbilled fees for August 2015,

23   but no supporting documentation has been provided regarding the hours worked in August 2015.

24   *See* ECF No. 151, Ex. F.  Plaintiff does not even state whether counsel actually worked the

25   estimated hours in August 2015.  Without supporting documentation for August 2015, the Court

26   cannot assess what hours were worked, let alone whether the hours were reasonable, so the Court

27   awards no attorney's fees for counsel's estimate of fees incurred in August 2015.

28

United States District Court
Northern District of California

Plaintiff also requests costs of $4,151.87 invoiced by lead counsel, $1,261.17 invoiced by local counsel, and $2,173.74 in actually incurred but unbilled costs for August 2015 for a total of $7,586.78 in costs.  *See* ECF No. 151, Ex. F.  The Court finds these costs reasonable and therefore awards $7,586.78 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment as to Defendant Organic Alliance and Defendant Parker Booth.  The Court DENIES Plaintiff's motion for default judgment as to Defendant Christopher White.  The Court enters judgment against Defendants Organic Alliance and Parker Booth for $150,541.82, corresponding to $40,937.25 for the unpaid invoice value of the produce, $21,240.29 in interest, $80,777.50 in attorney's fees, and $7,586.78 in costs.

**IT IS SO ORDERED.**

Dated: November 11, 2015

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No. 13-CV-03506-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT